All right, we're going to go to the last case of the day, and that case is 23-1275. Erma Leibas v. Thomas Dart. Hello, Mr. Casper. Good morning, Your Honors. May it please the Court. My name is Cass Thomas Casper. I represent the plaintiff, Erma Leibas, who is present for today for the record. Your Honors, we assigned three points of error, if error, to the District Court's decision on reconsideration, granting the motion for summary and judgment. I'll start with the two easy ones. First of all, we submit that the District Court, due respect to it, misread Dr. Aleman's ADA accommodation paperwork. Can we jump right in, because we have limited time. When we're looking at the adverse employment action, which is required for a discrimination, you know, disability discrimination claim, can you articulate for me what is the adverse action that has been taken? Ms. Leibas has been placed on an involuntary unpaid leave since about May 2019. She has been in unpaid status since then because of the breakdown of the ADA accommodation process. And who broke that down, as far as the adverse employment action taken by the county? Because it's my, I'm just, I'm just needing clarification. We submit that HR did not engage in a good-faith ADA interactive process and the District Court actually found that the ADA interactive process was futile because the HR manager here, Rebecca Ryerson, wrote in a November 11th, 2019 email, which is at docket 9610, I'm going to quote this, Officer Leibas, I am writing pursuant to our discussions in which it was determined that there was not a reasonable accommodation that would assist you in performing the essential functions of your current position. That is the HR manager's conclusion. But then if we finish that, the rest of that conversation is come in so we can reassess what, based on the accommodations that you need, are there any positions that are available? So what Ms. Ryerson was proposing to do is to transfer Irma Leibas to a non-correctional officer position that would lead to a pay cut if she passed a skills assessment. But what we're trying to assess is the adverse employment action that was taken. That's what I'm trying to get an answer to. If the interactive process is asking, at least from the employer's side, to come in so we can make this assessment, how was it, I guess, how was it HR's part of the interactive process that broke it down? Because it was not a good faith interactive process to begin with. Ms. Ryerson had already pre-judged the facts of this and determined whatever Irma Leibas was going to tell her, whatever her doctor's note said, that she could not perform the essential functions of a correctional officer, which we submit, is not true based on the evidence. And that's where one of the main points of errors we want to talk about. What evidence do you have that this wasn't good faith? Ms. Ryerson sent a couple messages trying to get your client to come in and your client admitted at her deposition, I didn't want to communicate with her. There were email exchanges in the record where Irma Leibas was communicating. They're rather extensive over that year-long period where she was communicating with Ms. Ryerson and at every instance Ms. Ryerson was just insisting again and again, you can't perform the essential functions with these restrictions, you can't perform the essential functions. But the communications go back and forth and Ms. Ryerson sends another email asking her to engage in the process and she says essentially, I don't want to talk to you, talk to my attorney, and then she doesn't respond to the other emails. I don't know how you could say that's bad faith. Because at that point, Ms. Ryerson had already pre-judged that Irma was not able to perform the essential functions of the correctional officer position. The process was broken down as a result of that pre-judgment and it's not true. Ms. Leibas could perform the essential functions of the correctional officer position. Mr. Kasper, help me with this. You offered two arguments. First, that Ms. Leibas medically requires breaks. But second, that if no one is available to cover Ms. Leibas's post, she does not need to take a break. Aren't those two arguments incompatible with each other? They're not incompatible, Your Honor. It's just that if the need arises, because it's irritable bowel syndrome, Raynaud syndrome, and scleroderma, if the need arises, she may have to take up to three additional breaks per shift. It's not of necessity that she will. And, as Ms. Leibas stated in her affidavit, she said this is not the kind of break where I have to drop everything immediately and run to the bathroom. She can wait for coverage. And the CCDOC has already anticipated this kind of situation with its written rules and its procedures. That she can radio her supervisor and say, I need to take a break, can you provide coverage? She can wait for coverage. Or, failing that, she can radio one of the movement officers, of which there are two assigned to every housing unit, and say, I need a break, can you come and cover me? Failing that, there's a third establishment. I think that where the disconnect is, is her doctor stated that she, what she was being treated for, and that she would need these breaks. And so, if that's the restriction that her doctor says that she will need, is it a suggestion that the employer could not provide those restrictions, or that it was up to Ms. Leibas to choose when to, when she needed those restrictions? I'm just trying to get clarity on the point, I'm sorry. So, to be clear, the doctor's note about this says, allowed more frequent breaks and rest periods and bathroom breaks up to, up to, three additional times per month. And this would be on an as-needed basis. Ms. Leibas would have to radio her supervisor or the movement officer and say, hey, I need one of these extra breaks, can you come cover me? That's it. That is, fundamentally. But here's, you know, I think that the staffing issue, because the parties do seem to agree that the facility does not have enough staff to cover the current number of breaks. How, then, could an accommodation that requires more breaks be viewed as reasonable? Okay, two points to that. First of all, the record is very undeveloped about the extent of this staffing issue. There wasn't, like, a fulsome, on either side, like, what is the staffing level at the jail? Just open up the newspaper. But no, no. To your point, assuming, for the sake of argument, that there is a staffing issue, Irma has been doing this job with these conditions since 2010. Your Honors, she's already been doing it, and she's been requesting. Wasn't she on a modified duty assignment from 2015, somewhere around 2019? So she wasn't doing the essential functions of a correctional officer as they were defined, or maybe redefined, as the essential functions. And that's why the letter was sent in September to say, we need to reassess this. We need to reassess who can perform the essential functions with or without reasonable accommodation. So what I can tell you is, I don't remember if it was modified duty or some other duty. She was working on tiers. She was working in a housing unit, and she was performing the essential functions of the job. If we want to call her modified duty or something else, she was doing the same thing that we're asking that she be allowed to do with the extra breaks accommodation, working the tier. And we submit that that is such powerful evidence in this case, the fact that these have been lifelong conditions. She's been taking these extra breaks since 2010, and there's nothing in the record to suggest that her performance suffered, that she was absent from her tier and it caused a problem, or that she's disciplined or not performing. She's already been doing these, and she just had to put them to writing when the sheriff's office sent out that options letter in September 2018. What happens if coverage isn't available for the breaks because of the staff shortage? Irma Leibovitz has said in that instance, she can stay on the tier and continue to maintain coverage. How does this differ from Tate then? Because where we said you really can't have it both ways. In Tate, his restriction was essentially no inmate contact or avoid high conflict situations, and that was a very difficult case. That was a very difficult restriction to deal with. But the focus of the ruling in Tate wasn't on the difficulty of the restriction. The focus on the ruling in Tate was on the fact that the doctor said you have to have this restriction, or the request was for this restriction, and Tate said, well, it's okay if I don't get it. At certain times, it's okay. And we found, look, you can't have it both ways. It's okay if I don't get it. But here, I agree with your honor. The Tate doctor's note was very firm, avoid inmate contact situations. This one, there's discretion built into Dr. Alamont's letter up to three additional breaks per shift. That means she may need no additional breaks. She may need one. It's up to her discretion. So there's some built-in discretionary need that Dr. Alamont anticipates in her doctor's order here. But there's one other point I want to make about this, which is that... I do have to ask you, in the limited time, about the standard of review. This is a motion for reconsideration, and there's some case law that says that's left to the discretion, and we review it for an abuse of discretion. But both sides seem to agree that our review of this question presented to us should be de novo. I confess, I don't believe we fulsomely briefed that issue, and I assumed it was de novo, and I think my wrong. I could certainly submit supplemental brief on that if necessary, but I thought it was de novo. I mean, because the summary judgment ruling would be de novo up here, as I understand it, and this was a motion to reconsider the motion for summary judgment. And so I guess that's my question. Do we lean back and grab the standard of review for a summary judgment motion, or are we limited our review to that of abuse of discretion? I believe it's de novo, and I think because we're fundamentally dealing with the motion for summary judgment, it should be de novo review. I see that I'm out of time. Thank you very much, Mr. Chastrer. Good afternoon, Your Honors. Nazia Hassan, appearing on behalf of the appellees in this matter. We asked this court to affirm the District Court's grant of summary judgment for three reasons. First, Irma Lippis was not a based on her medical restrictions. Second, even if she were deemed a qualified individual, she abandoned the interactive process, and therefore her claims failed. Third, she did not suffer an adverse job action based on her disability. Tell me, isn't there controverted record evidence as to the necessity of the breaks and the availability of movement officers? Why should this be decided on summary judgment? Well, Your Honor, we think the record is undisputed in the fact of what her medical condition was and what the doctor said her life activity that was impacted by her medical conditions was an inability to stand for long periods. There's a lot of focus on the need for bathroom breaks, but that's not what the record prevented her from being able to stand. So basically, without saying it, she needed to sit down and rest for periods of time. The record is clear that, as this court pointed out in Tate v. Dart, we can't disregard a doctor's medical restrictions and let an employee exceed their restrictions even if they think they can. So, as I was saying, she's not a qualified individual because she cannot perform this job with a reasonable accommodation. Does it matter that Tate was focused on whether or not something was an essential function of the job as opposed to whether or not she was a qualified individual? Well, use the same analysis, Your Honor. And in fact, Tate went through an analysis of this particular job space, the Department of Corrections at the Cook Place of Work, and those considerations in an ADA context are different from other cases. In Tate v. Dart, for example, the court said that maintaining bridges is not the same as maintaining, I'm paraphrasing, maintaining security. Asking for somebody to come relieve you as a bus driver is not the same as asking for somebody to come relieve you as a law enforcement professional. I think the district court even acknowledged that, saying that breaks might be reasonable in many workplaces, but the problem was it's here. Correct. And this court has held in Gratzel v. Office of the Chief Judge, additional breaks could be a reasonable accommodation in certain contexts, but not in this context and not for this job of correctional officer. Was she performing the job, though, with this need for breaks after the diagnosis, that's the representation made at oral argument, is that she was performing the essential functions of a correctional officer at the time she received this HR? No. If I can briefly summarize what her employment history was with the sheriff's office, I'll start with 2015 through 2018. She was in a modified duty assignment, which essentially didn't have her performing the main functions of the correctional officer, mostly in the visitor information center, which, you know, was a more sedentary type of assignment. She did return for a brief period in March of 2019 without any restrictions, without the need for breaks. I think maybe she did have the restrictions to wear gloves and to wear the battery-powered jacket, but not a restriction regarding breaks. She then went on disability leave in late March of 2019, and since then she hasn't returned to the workplace. So that was March of 2019? Yes. For three weeks, I believe, in three weeks. Without any? Without any restriction for a need for breaks. Oh, okay. Yes. And then in May of 2019, she submitted a new doctor's note that asked for these breaks. This is the doctor's note that appears in the record that we discussed earlier. And she's taking disability leave then in March of 2019? Yes. She took disability leave, and then those benefits expired, and since then she hasn't returned to the workplace. Looking at the adverse employment action, and the suggestion being that it was human resources who broke down the interactive process, because if we sidestep a qualified individual question, we still have to ask, was there an adverse employment action taken? No, there was not. Ms. Leibis went on voluntary disability leave. She, as I stated, she was on leave until, I don't know exactly when she went on leave, in 2018. She was on leave when she went on leave in September of 2018. She came back. She talked to Rebecca Ryerson, the Director of Employee Services, who discussed her need for ADA accommodations and what they could do for her. In February of 2019, when they were discussing her return, Rebecca Ryerson explained to her that breaks could not be considered reasonable accommodation based on the job. They couldn't do it. They couldn't grant that accommodation. So then she came back without those restrictions for a few months. So you're saying that anyone that would need any break cannot work? No, that's not what I'm saying. I'm saying that having an accommodation of additional breaks to rest, and additional breaks to not be at your post, could not be accommodated in the Correctional Officer's position. It's a at all times, unless there's somebody to relieve you. So she did work for a very short period of time, in tiers, without any restriction or accommodation for additional breaks. Then, she hasn't worked yet. She's been out on leave, or she's not returned. But she wanted to come back, and they said no, because we can't give you this accommodation. Why wouldn't that be an adverse employment action? Because it was voluntary, Your Honor. In Walmart, told you. How was it voluntary when she wanted to come back, and they said no? Well, she could have come back if she presented alternate restrictions, or not alternate restrictions. Doesn't that go to the qualified individual, as opposed to the adverse action? Well, first we have to answer if she's a qualified individual. I'm following up on Judge Pryor's question, where we're jumping to that action. It seems like she was told don't come back. No, Your Honor. She was not told don't come back. She came back, and then she took leave. After the leave, though, she was not permitted to come back, because you couldn't accommodate her request. That doesn't seem voluntary. There was an attempt to engage her in the interactive process. That's a separate element. Yes. Well, I'm just trying to lay the picture of what happened. So, when she left the workplace in March of 2019, she submitted doctor's note at the end of May 2019, and then for several months after, there was an attempt to connect with her and discuss what other possibilities there were for her to come back to work. She refused to take those calls or respond to those emails and preferred to let the court handle it. They filed suit, and we've proceeded in litigation since. I did not hear the last two sentences. I said they proceeded to file suit in court, and we've continued in litigation ever since. But I'd like to stress that the job of correctional officer is a highly physical job requiring an employee to maintain their post, to be there, to be able to stand at their assignment and monitor the inmates. This has been long-standing case law in this circuit. Tate v. Dart, Dargis v. Sheehan, Miller v. Illinois Department of Corrections. All of those cases discuss the highly unique nature of a correctional facility and the needs of such a place of work in an ADA context. So, we ask that this court affirm the District Court's grant of summary judgment unless there are any further questions. Thank you. Your Honor, just two points in rebuttal and I'll be brief. The ADA does not make an exception for correctional facilities. Correctional officers are not entitled to a watered-down version of the rights under the ADA, and we submit that for all the concerns about this being a safety and security oriented environment. There's no evidence that Irma can't do those functions. She just needs to take up to three additional breaks. The EEOC interpretive guidance says additional breaks are recognized as a reasonable accommodation. And furthermore, my final point, there's around 3,000 correctional officers over there at the jail. We cannot possibly be contending that each one of those only takes two breaks per shift. This is an impossibility. And all we're saying is that Irma should be allowed to take additional breaks because of her medical conditions, just like other officers may have to take additional breaks when they radio for coverage. For those reasons, we'd ask that this matter be reversed and set for a trial. Thank you very much. Any of you? Thank you. Thank you very, very much. Thank you, Mr. Casper, very much. Thank you, Ms. Hahn, very much. Case will be taken under advisement.